**COZEN O'CONNOR**
Karl O. Riley (Nevada Bar No. 12077)
*koriley@cozen.com*
3753 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169
Telephone: 702-470-2314
Facsimile: 702-470-2351

Michael Rafalko *(Pro Hac Vice to be filed)*
*Mrafalko@cozen.com*
Kathryn Rivera *(Pro Hac Vice to be filed)*
*krivera@cozen.com*
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: 215.665.4146
Facsimile: 215.701-2198

Attorneys for Defendant TRANSAMERICA LIFE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JACKLYN G. RIGGS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY, DOES I-XXX; AND ABC CORPORATIONS A-Z, inclusive,<br><br>Defendant. | Case No.<br><br>State Court Case No. CV22-00153<br><br>**DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S NOTICE OF REMOVAL**<br><br>Complaint Filed: January 31, 2022<br>Removed: March 8, 2022 |

PLEASE TAKE NOTICE that Defendant Transamerica Life Insurance Company ("Defendant" or "TLIC") hereby removes Case No. CV22-00153 from the Second Judicial District Court of the State of Nevada, Washoe County, to the United States District Court for the District of Nevada, Reno Division. The grounds for removal are as follows:

NOTICE OF REMOVAL

1

## I. THE STATE COURT ACTION

1. On January 31, 2022, Plaintiffs filed the action styled as *Jacklyn G. Riggs vs. Transamerica Life Insurance Company, Does I-XXX, and ABC Corporations A-Z*, case number CV22-00153 in the Second Judicial District Court of the State of Nevada, Washoe County. True and correct copies of the Summons, Complaint, Exhibits and Proof of Service are attached as **Exhibit A**.

2. Jacklyn G. Riggs ("Plaintiff") is a citizen of Nevada. Complaint, ¶ 1.

3. TLIC is a corporation organized and existing under the laws of the State of Iowa with its principal place of business and "nerve center" in Cedar Rapids, Iowa, and is therefore deemed to be a citizen of the State of Iowa. Declaration of Courtney Wunderlich, ¶ 4, attached hereto as **Exhibit B** ("Wunderlich Declaration").

4. Plaintiff's Complaint arises from a dispute regarding the denial of benefits under her long-term care insurance policy, No. 890758399, which was issued by TLIC to Plaintiff in 1999 ("the Policy"). Complaint, ¶¶ 8-9; 4-12. A true and correct copy of the Policy (excluding the application containing protected health information under the HIPAA statute) is attached hereto as **Exhibit C**; *see also* Wunderlich Declaration, Ex. B at ¶ 4.

5. In the Complaint, Plaintiff alleges that she filed her first claim with TLIC for long term care benefits under the Policy in the year 2021, No. 20210701006 ("the Claim"), which TLIC denied on or about September 8, 2021. Complaint, ¶ 12.

6. By letter dated September 8, 2021, TLIC allegedly explained that its denial of the Claim was due to Plaintiff's inability to meet the requisite Chronically Ill criteria for benefit eligibility. Complaint, ¶ 12.

7. Following TLIC's denial of the Claim, Plaintiff asserts that she pursued an appeal of same via letter dated November 12, 2021. Complaint, ¶ 15.

8. According to Plaintiff, she initiated covered services under the Policy on June 30, 2021 with Seniors Helping Seniors. Complaint, ¶ 22.

9. She received these services through Seniors Helping Seniors from June 30, 2021 to, at least, December 31, 2021. Complaint, ¶ 25.

10. Plaintiff asserts that TLIC has improperly failed to pay benefits for care services she received in accordance with its contractual duties under the Policy. Complaint, ¶ 23.

11. Plaintiff brings causes of action for breach of the insurance contract, breach of the duty of good faith and fair dealing (*i.e.*, "bad faith,") and a violation of Nevada's Unfair Trade Practices Act. Complaint, ¶¶ 34-55.

12. Plaintiff seeks actual damages from TLIC and damages for emotional distress, plus punitive damages, costs of suit, interest and reasonable attorney's fees. Complaint at Prayer for Relief ¶¶ 1-7.

## II.   GROUNDS FOR REMOVAL

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a), since this is a civil action between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Thus, removal is proper on the basis of diversity under 28 U.S.C. §§1441 (a), (b) and 28 U.S.C §1446.

### A.   Diversity of Citizenship

14. Plaintiff is a citizen of Nevada. Complaint, ¶ 1.

15. A corporation is a citizen of the state in which it is incorporated and in which it maintains its principal place of business. 28 U.S.C. § 1332(c)(1).

16. TLIC is a corporation organized and existing under the laws of the State of Iowa with its principal place of business and "nerve center" in Cedar Rapids, Iowa, and is therefore deemed to be a citizen of the State of Iowa. Wunderlich Declaration, Ex. B, ¶ 3.

17. The citizenship of Doe Defendants 1 through 50 is disregarded for purposes of determining diversity jurisdiction. 28 U.S.C. § 1441(b)(1).

3
NOTICE OF REMOVAL

18. Thus, there is (and was at the time the Complaint was filed) complete diversity of citizenship between Plaintiff and TLIC. 28 U.S.C. § 1332(a)(1).

**B.   Amount in Controversy**

19. Typically, the amount of controversy is determined from the face of the pleadings; however, the Nevada Rules of Civil Procedure, which were applicable to this lawsuit when it was filed in state court, prohibit a claimant from pleading damages in a specific amount exceeding $15,000. N.R.C.P. 8(a); *Pereza v. Progressive Direct Ins. Co.*, No. 2:15-CV-77 JCM VCF, 2015 WL 1549270, at *2 (D. Nev. Apr. 8, 2015) attached at **Exhibit D**. Thus, the complaint in this action could not and does not state on its face that Plaintiff has placed more than $75,000 in controversy. Removal of the case to Federal Court is appropriate nonetheless. "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

20. The amount in controversy is the "amount at stake in the underlying litigation," and therefore "the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (internal citations omitted).

21. "[T]his includes any result of the litigation, excluding interest and costs, that 'entails a payment' by the defendant." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007). Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or in contract. *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 648-49 (9th Cir. 2005).

22. Where, as here, a complaint fails to state a specific amount of damages,

4
NOTICE OF REMOVAL

defendant may introduce facts to support that the jurisdictional amount for removal on the basis of diversity has been met by a preponderance of the evidence. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403 (9th Cir. 1996). In other words, defendant must demonstrate that it is "more likely than not" that the amount in controversy exceeds $ 75,000. *Id.* at 404.

23. Although Plaintiff in this lawsuit does not quantify her alleged damages beyond a statement that they will exceed the jurisdictional limits of $15,000, the amount that she has placed in controversy materially exceeds $75,000, exclusive of interest and costs, as Plaintiff seeks actual damages in the form of Policy benefits allegedly due in regard to Transamerica's denial of the Claim, plus punitive damages and other extra-contractual amounts for TLIC's alleged bad faith and a violation of Nevada's Unfair Trade Practices and attorneys' fees incurred recovering the Claim benefits under the Policy. Complaint at Prayer for Relief.

24. As discussed below, each of these putative categories of relief must be aggregated by the Court with Plaintiff's prayer for actual damages in furtherance of the $75,000 threshold.[1]

**C.    Past Policy Benefits**

25. Plaintiff has asserted a breach of contract claim and seeks damages for the allegedly withheld Claim benefits under the Policy. Complaint, ¶¶ 34-42; Prayer for Relief.

26. According to her Complaint, Plaintiff sought benefits under her Policy for covered services rendered by Seniors Helping Seniors from, at least, June 30, 2021 through December 31, 2021, which have not been paid by TLIC. At present, Plaintiff is also pursuing an appeal related to same. Complaint, ¶¶ 23-25. From June 30, 2021

---

[1] Notwithstanding that the amount placed in controversy by Plaintiff materially exceeds the $75,000 threshold for removal, TLIC denies that Plaintiff is entitled to any measure of relief. Nothing herein shall constitute an admission or waiver of any right, claim or defense by TLIC, all of which are expressly reserved.

through January 31, 2022, which is the date suit was filed by Plaintiff, there have been 215 days of non-payment.

27. The specific kind of benefits Plaintiff sought under the Policy is for Home and Community-Based Services. Wunderlich Declaration, Ex. B, ¶ 5.

28. Plaintiff's Policy became effective on September 24, 1999. Policy, Ex. C at Policy Schedule.

29. As of September 24, 1999, the Home and Community-Based Services daily benefit available under the Policy had a maximum daily benefit of $75. Policy, Ex. C at Policy Schedule.

30. However, the Home and Community-Based Services daily benefit was not a static number. Indeed, this number increased over time, on each annual Policy anniversary. Specifically, the Policy contains a Simple Automatic Increase Benefit Rider ("the 5% Rider"), which provides for annual automatic increases equal to 5% of the Policy's initial Home and Community-Based Services maximum daily benefit of $75. Policy, Ex. C at Simple Automatic Increase Benefit Rider.

31. Thus, by operation of the Rider, the Home and Community-Based Services maximum daily benefit increased and continues to increase by $3.75 (5% of $75) each year on the Policy's anniversary date (September 24th). This automatic annual increase has taken place on each Policy anniversary since the Policy was issued in 1999. Policy, Ex. C at Policy Schedule and Simple Automatic Increase Benefit Rider.

32. At the time that Plaintiff began receiving services from Seniors Helping Seniors on June 30, 2021, the Home and Community-Based Services maximum daily benefit had increased to $153.75. And, on September 24, 2021, the Home and Community-Based Services maximum daily benefit increased again to $157.50, where it remains at the present time.

33. Additionally, the Policy includes an Elimination Period of 10 days for

any Home and Community-Based Services benefit.  The Elimination Period is tantamount to a deductible in other kinds of policies.  In other words, Plaintiff would need to personally satisfy the cost of 10 days of covered services before becoming eligible to receive benefit payments from TLIC.  Policy, Ex. C at Policy Schedule.

34. In total, accounting for the Elimination Period, 75 days elapsed from July 10, 2021 through September 23, 2021, at which time the maximum daily benefit available under the Policy for the Home and Community-Based Services benefit would have been $153.75.  This equals $11,531.25.  As discussed, the available daily maximum benefit then increased on September 23, 2021 by operation of the 5% Rider.

35. In total, 129 days elapsed from September 24, 2021 through January 31, 2022, at which time the maximum daily benefit available under the Policy for the Home and Community-Based Services benefit would have been $157.50.  This equals $20,317.50.

36. Additionally, Plaintiff's Policy included a Waiver of Premium Rider ("the Waiver Rider"), which meant that after she became benefit eligible, her premiums would be waived beginning in the month after the month during which she was deemed benefit eligible.  Thus, here, had Plaintiff been deemed benefit eligible when she made her claim in July of 2021 for services beginning on June 30, 2021, her premiums would have been waived beginning in August of 2021.  Policy, Ex. C at Waiver of Premium Rider.

37. From August of 2021 through September 23, 2021, Plaintiff's monthly premium would have been $244.38.  Then, because Plaintiff's Policy underwent a premium rate change in September of 2021, from October of 2021 through January 31, 2022, Plaintiff's monthly premium would have been $273.72 per month.  Accordingly, a premium waiver equaling $1,590.51 must be added to any benefits calculated above because this is the amount of premium that Plaintiff actually paid during the time period when she claims to have been eligible for benefits and, in turn,

7

NOTICE OF REMOVAL

when her premium would have been waived if, in fact, she was eligible. Wunderlich Declaration, Ex. B, ¶¶ 6-7.

38. Plaintiff is therefore seeking compensatory damages that would amount to, at least, $33,439.26 in actual damages for the alleged breach of the insurance contract claim. This number represents the aggregate of (1) the benefits Plaintiff has placed in controversy for the July 10, 2021 to September 23, 2021 time period; plus (2) the benefits Plaintiff has placed in controversy for the September 24, 2021 to January 31, 2021 time period; plus (3) the amount of premium Plaintiff has paid since the denial of her claim, which she has placed in controversy due to the Waiver Rider described above.

### D. Emotional Distress

39. Plaintiff's Complaint also seeks damages for emotional distress, which must be aggregated with her purported economic damages for purposes of removal. Complaint at ¶ 33.

40. Compensatory damages may be awarded for emotional distress in insurance bad faith lawsuits. *Farmers Home Mut. Ins. Co. v. Fiscus*, 102 Nev. 371, 375, 725 P.2d 234, 236 (1986).

41. And, often, in bad faith cases, juries have awarded emotional distress damages well in excess of the minimum $75,000 amount in controversy. *See, e.g., Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004) (jury awarded $400,000 in emotional distress damages for bad faith damages stemming from denial of disability benefits); *Clayton v. United Services Auto. Assn.*, 54 Cal.App.4th 1158 (1997) (emotional distress award of $400,000 for insurance bad faith); *Ace v. Aetna Life Ins. Co.*, 40 F.Supp.2d 1125 (D. Alaska 1999) (jury verdict $100,000 for emotional distress for wrongful denial of long-term disability benefits for 9-month period).

42. In light of these jury verdicts, emotional distress damages have the

8

NOTICE OF REMOVAL

potential to materially exceed $75,000 if Plaintiff prevails on the claim.

### E. Treble Damages

43. The Nevada Unfair Trade Practices Act also includes a provision permitting treble damages as a form of relief in a civil action arising under the statute. Nev. Rev. Stat. Ann. § 598A.210.

44. Given that Plaintiff may therefore be entitled to an award of up to three times her actual or compensatory damages, her damages are likely to well-exceed the $75,000 threshold even in the absence of exemplary damages.

### F. Punitive Damages

45. Contractual damages under the Policy, however, are not the only damages sought. Plaintiff also seeks punitive damages in connection with her bad faith claim. Complaint, ¶¶ 37-44.

46. "It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.,* 261 F.3d 927, 945 (9th Cir. 2001).

47. "To include punitive damages, Defendants, 'must present evidence indicating that the amount plaintiff seeks will, more likely than not, exceed the amount needed to increase the amount in controversy to $75,000.'" *Cayer v. Vons Companies*, No. 216CV02387GMNNJK, 2017 WL 3115294, at *3 (D. Nev. July 21, 2017) (*quoting Flores v. Standard Ins. Co.*, 2010 WL 185949, at *14 (D. Nev. Jan. 14, 2010)).

48. "To meet this burden, Defendants 'may introduce evidence of jury verdicts in cases involving similar facts.'" *Id.*

49. Nevada law provides that punitive damages may be awarded against an insurer who acts in bad faith up to the constitutionally permitted ratio. Nev.Rev.Stat. 42.005(1)-(2)(b); *see also Pereza*, 2015 WL 1549270 at *3.

50. Plaintiff seeks both punitive damages flowing from TLIC's alleged bad

faith and its purported violation of the Nevada Unfair Trade Practices. Complaint, ¶¶ 48-55.

51. In *Pereza*—a Nevada based bad faith lawsuit—the Court considered whether the substantial punitive damages awarded in another bad faith lawsuit *Merrick v. Paul Revere Life Ins., Co.* could be relied upon by the defendant as evidence supporting an estimate of potential punitive damages for the sake of removal. While the Court acknowledged the factual differences between these cases, it reasoned that *Merrick* was nonetheless instructive for the general proposition that punitive damages awards may be sufficient in and of themselves to put the amount in controversy over the jurisdictional minimum in light of plaintiff's other claims. *Id*. at *3–4. In *Merrick*, the Court upheld a jury's punitive damages award against one defendant at an 8.18:1 ratio of punitive damages to actual and potential harm. *Merrick v. Paul Revere Life Ins. Co.*, 594 F. Supp. 2d 1168, 1191 (D. Nev. 2008). Here, notwithstanding that an award of punitive damages would be a totally inappropriate and unjustified measure of relief, they have clearly been placed in controversy by plaintiff. Thus, in order to aggregate punitive damages as an aspect of damages sought by the Plaintiff, the Court should apply the *Pereza* Court's reasoning and similarly hold that, for the purposes of removal only, a punitive damages award in this case would be reasonably likely to exceed the $75,000 threshold even before it is aggregated with Plaintiff's actual damages alleged.

52. Moreover, punitive damages have been awarded in other matters at a ratio that, if applied here, would exceed the requisite threshold. *See, e.g.*, *Ace v. Aetna Life Ins. Co.,* 40 F. Supp. 2d 1125 (D. Alaska 1999); *Hull v. Ability Ins. Co.*, 2012 U.S. Dist. LEXIS 173487 (D. Mon. Dec. 6, 2012).

53. Regardless of whether Plaintiff's claim for benefits under the Policy independently exceed the $75,000 threshold, these cases establish, by a preponderance of the evidence, that punitive damage awards in similar insurance

cases may be substantial and would satisfy the amount in controversy requirement for the sake of removal.

54. As stated, any punitive damages award would need to be aggregated with Plaintiff's actual damages award for the sake of removal, further increasing the certainty with which it can be said that Plaintiff has placed more than $75,000 at issue in this litigation.

**G. Attorneys' Fees**

55. Importantly, Plaintiff also seeks attorneys' fees in her Prayer for Relief.

56. Nevada Courts "consider attorneys' fees to be within the amount in controversy if the removing party: (1) identifies 'an applicable statute which could authorize an award of attorneys' fees and (2) provide[s] an estimate as to the time the case will require and opposing counsel's hourly billing rate.'" *Cayer v. Vons Companies*, No. 216CV02387GMNNJK, 2017 WL 3115294, at *2 (D. Nev. July 21, 2017) (*quoting Hannon v. State Farm Mut. Auto. Ins. Co.*, No. 2:14–cv–1623–GMN–NJK, 2014 WL 7146659, at *5 (D. Nev. Dec. 12, 2014)).

57. "If the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future [attorneys' fees] are 'at stake' in the litigation," and a court "must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). *See also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

58. Generally, attorneys' fees have the potential to be substantial in long-term care insurance coverage cases. *See e.g.*, *Madden*, 2011 WL 7692985 (award of $170,607.50 in attorneys' fees in a long-term care insurance case).

59. In the instant action, Plaintiff has alleged violations of various Nevada statutes surrounding allegedly deceptive and/or unfair trade practices: Nev. Rev. Stat. Ann. § 598.0923; NRS 686A.310; and NAC 686A.660; 665; 670; and 675. The

11
NOTICE OF REMOVAL

statute includes the possibility that attorney's fees may be recovered for a violation. Nev. Rev. Stat. Ann. § 598A.210. Plaintiff has also included a prayer for attorney's fees in the complaint. Complaint at Prayer for Relief.

60. Moreover, the attorneys who represent Plaintiff have previously certified their hourly rates to Nevada Courts. Specifically, in a 2018 case *Leverty & Assoc. L. Chtd. v. Exley*, Vernon E. Leverty claimed an hourly rate of $450, William R. Ginn claimed an hourly rate of $400, and Jess P. Rinehart claimed an hourly rate of $350. *Leverty & Assocs. L. Chtd v. Exley*, No. 317CV00175MMDWGC, 2018 WL 6728415, at *17 (D. Nev. Nov. 5, 2018), *report and recommendation adopted sub nom. Leverty & Assocs. L. Chtd. v. Exley*, No. 317CV00175MMDWGC, 2019 WL 913096 (D. Nev. Feb. 22, 2019), *aff'd*, 830 F. App'x 983 (9th Cir. 2020). Presumably, these rates have since increased.

61. Between the anticipated preparation of and response to initial pleadings, court appearances, fact finding, discovery (including, but not limited to, multiple depositions, review of medical records and written discovery requests), expert retention, motion practice, and trial, a reasonable estimation of the time that Plaintiff's counsel will spend prosecuting this matter would likely exceed 500 hours, perhaps by a significant margin. And, given a hypothetical blended rate of $400, representing the median and average hourly rate in 2018 of three of the attorneys assigned to this case, it would take just 187.5 aggregative hours to reach the $75,000 threshold. Thus, an award of attorneys' fees sought by Plaintiff, in and of itself, would be likely to materially exceed the $75,000 jurisdictional limit, if not more than double it, even before it is aggregated with the other measures of relief sought in the Complaint and discussed in this Notice.

62. Given the multiple categories of damages sought in connection with this action, it cannot reasonably be denied that the aggregate amount Plaintiff has placed in controversy in this litigation is many times higher than the $75,000 jurisdictional

limit in a diversity action.

63. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446 (b), as it has been filed within thirty (30) days of TLIC's receipt of the Summons and Complaint, which were served upon the Nevada Commissioner of Insurance on February 7, 2022. A true and correct copy of the Proof of Service is attached as **Exhibit A.**

64. In accordance with 28 U.S.C. § 1446 (a), a copy of all process, pleadings, and orders served upon TLIC are attached to this Notice as **Exhibit A.** A copy of the docket of the state court action is also attached hereto as **Exhibit A**.

65. This action is properly removed to the United States District Court for the District of Nevada because this matter was filed in the Washoe County, Nevada, which lies within this District and Division. *See*, 28 U.S.C. § 84(c)(2)

66. Pursuant to 28 U.S.C. § 1446(d), TLIC has given written notice of this Notice of Removal to Plaintiff, and, after filing this Notice of Removal, shall promptly file a copy of this Notice of Removal with the Clerk of the Second Judicial District Court of the State of Nevada, Washoe County.

67. For these reasons, TLIC hereby removes the action now pending in the Second Judicial District Court of the State of Nevada, Washoe County, and Case No. Case No. CV22-00153.

**WHEREFORE**, Defendant hereby removes this action now pending against it in the Second Judicial District Court of the State of Nevada, Washoe County to the United States District Court for the District of Nevada.

DATED: March 8, 2022

COZEN O'CONNOR

By: */s/ Karl O. Riley*
Karl O'Riley
Michael Rafalko
*(Pro Hac Vice to be filed)*
Kathryn Rivera
*(Pro Hac Vice to be filed)*

Attorneys for Defendant
TRANSAMERICA LIFE
INSURANCE COMPANY

14
NOTICE OF REMOVAL

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date below, the foregoing was filed with the Clerk of the Court using the CM/ECF system and copies were sent to the following via email:

| |
|---|
| LEVERTY & ASSOCIATES LAW CHTD. |
| Vernon E. Leverty, Esq. |
| Patrick R. Leverty, Esq. |
| William R. Ginn, Esq. |
| Jess P. Rinehart, Esq. |
| 832 Willow Street |
| Reno, Nevada 89502 |
| Telephone: (775) 322-6636 |
| Facsimile:  (775) 322-3953 |
| gene@levertylaw.com |
| pat@levertylaw.com |
| bill@levertylaw.com |
| jess@levertylaw.com |

DATED:     March 8, 2022.

*/s/ Ida L. Williamson*
Ida L. Williamson, Paralegal

NOTICE OF REMOVAL

15